

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ISAAC LEVIN,

Plaintiff,

vs.

KENNETH J. FRANK, individually and as Corporation Counsel for The City of Binghamton, BRIAN SEACHRIST, individually and as first Corporation Counsel, THE CITY OF BINGHAMTON, a governmental entity,

Defendants.

---

Docket # 3:18-cv-1292
(GTS/ DEP)

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff Isaac Levin (hereinafter referred to as "Plaintiff"), as and for his Complaint, alleges the following based upon personal knowledge as to allegations regarding the Defendants Kenneth J. Frank ("Frank"), Brian Seachrist ("Seachrist") and The City of Binghamton ("City")(collectively referred to as "Defendants"), and on information and belief as to all other allegations, and in support of his Complaint against the above-named Defendants states as follows:

### NATURE OF THE ACTION

1.  This is a civil action to redress violations of Plaintiff's rights guaranteed under the United States Constitution. Plaintiff seeks compensatory damages in the amount of $600,000, Treble damages in the amount of $1,800,000 and punitive damages in the amount of $1,000,000, a declaratory judgment, and reimbursement of attorney's fees and costs paid in the previous actions.

## JURISDICTION AND VENUE

2. Plaintiff brings his claims pursuant to 42 U.S.C. §1983. Additionally, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §2201.

3. This Court has subject matter jurisdiction over the claims arising under the United States Constitution pursuant to 28 U.S.C. §§1331 and 1343.

4. Venue in the Northern District of New York is proper under 28 U.S.C. §1391(b) in that substantially all of the events or omissions giving rise to the claims set forth herein occurred in this District, primarily during the course of litigation under Civil Docket # 11-CV-1300.

## THE PARTIES

5. Plaintiff is *sui juris* before this Court, an individual residing in the State of New York, and was, at all relevant times, an investor in 26 Seminary Project LLC (hereinafter referred to as the "LLC") and a member of the LLC.

6. As an investor in the LLC, Plaintiff and his spouse, among others, personally suffered emotional distress and financial losses because of Defendants' wrongful conduct against the property at the heart of this action and against Plaintiff individually. *Orgain v. City of Salisbury*, 521 F.Supp.2d 465 (D. Md. 2007) (holding that members of LLC had standing to sue for emotional distress and financial loss personal to them).

2

7.    As the LLC is being dissolved, Plaintiff has standing to bring forth claims in his individual capacity for damages suffered by him individually.

8.    Defendant Kenneth J. Frank (hereinafter referred to as "Frank") is, and at all relevant times was, the highest-ranking official in the City of Binghamton's Office of Corporation Counsel ("Corporation Counsel"). Frank maintains his principal place of business at City Hall.

9.    Defendant Brian M. Seachrist (hereinafter referred to as "Seachrist") is, and at all relevant times has been, the City of Binghamton's Assistant Corporation Counsel. Seachrist works under the supervision of Frank and maintains his principal place of business at City Hall.

10.    Defendant, The City of Binghamton (hereinafter referred to as "Binghamton" or "City") is a municipal corporation organized under the laws of the State of New York. The City maintains its principal place of business at City Hall, 38 Hawley Street, Binghamton, New York ("City Hall").

11.    Corporation Counsel and Assistant Corporation Counsel are responsible for all legal activities related to the City, including representing the Mayor, City Council, department heads and individual employees in their official capacities in federal, state, and local courts, administrative proceedings, workers' compensation, unemployment, and real property actions.

12. Corporation Counsel is also responsible for representing, among other City divisions, departments, and/or agencies, the Planning Commission, Zoning Board, and Code Enforcement.

13. Frank and Seachrist developed the zoning code of the City of Binghamton and were responsible to review and update the code over the years.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

14. From the outset it should be noted that Plaintiff is not seeking to re-litigate the original action. Plaintiff now believes, that upon discovery and review of the zoning code of the City of Binghamton, **Appendix A**, adopted on June 6, 1983[1] and a comparison of Defendants' various statements in front of the boards and the courts, Defendants committed fraud upon the courts, from the State Supreme Court to the U.S. Supreme Court, and therefore the decision entered by the District Court Judge was in error and must be revisited. Justice does not prevail when fraud is committed upon the courts and in this case, justice failed and caused the destruction of a group of investors, among them Plaintiff and his spouse, who invested hard earned money in this project to do good for themselves and others and ended up in shambles.

15. Over the last year, Plaintiff has (a) studied the various hearings; (b) reviewed in detail the city ordinance code enacted in 2006; and (c) searched for previous codes,

---

[1] A rarity. A document that was extinguished by defendants.

subsequently found the 1983 **Appendix A.** After re-reading the hearing transcripts in front of the zoning board dated January 10, 2010, and comparing the statements made by Defendant Seachrist and the deposition testimony of Mr. Chadwick, it is abundantly clear that Defendants withheld crucial information from Plaintiff and the courts which consequently resulted in their perpetrating fraud upon the court and led ultimately to a judgment dismissing Plaintiff's claims.

16. Congress enacted 42 U.S.C. 1983 and entrusted the courts to implement and protect constitutional rights of individuals from horrendous and destructive municipality employees. In the case at bar they succeeded in destroying Plaintiff, his spouse and a number more investors associated with them.

17. In or around June of 2007, Plaintiff, in accordance with the instructions of his lending institution, approached Mr. David Chadwick, the supervisor of the City's building and construction department and requested a letter as to the status of the subject property. Plaintiff requested such a letter both to evaluate the soundness of the contemplated investment and to secure a loan with which to purchase the building.

18. On July 3, 2007, Mr. Chadwick provided a letter to Plaintiff's attorney stating that: "The property located at the above captioned address is in an R-3 Zoning District and the use as a three family is a legal non-conforming use accordance to the Zoning Ordinance of the City of Binghamton." *See Exhibit "A."*

19. It is undisputed that the letter did not mention anything about commercial space in the first floor. This was due to multiple factors associated with the introduction of

the zoning code on June 6, 1983 and replacing the antiquated code of 1970. 26 Seminary was declared non-conforming in June 6, 1983 when **Appendix A** to the zoning code was enacted and was grandfathered to all future amendments of the zoning code.

20. 26 Seminary was declared non-conforming in the Zoning Ordinance of the City of Binghamton for the following reasons:

a. 26 Seminary lacked parking to meet the zoning code like many other properties in the city which were constructed in the 19th century.

Deposition of Mr. Chadwick as to parking: ***Exhibit "B"***, Page 63 at 20 to 64 at 9[2].

Q. what did you understand that phrase "legal nonconforming use" to mean?

A. Is that the building was being used as a three family legally as a nonconforming use.

Q. Is that because its use as three family predated ordinances which otherwise make it illegal?

A. Yes

Q. when you have a legal nonconforming use, does that impact at all things like the parking requirements of the use?

A. Yes.

Q. How so?

---

[2] Only applicable pages are provided at this time.

A. Is that whatever zoning restrictions for a nonconforming use, it continues with the nonconforming use.

The 1983 **Appendix A** zoning and all subsequent changes to zoning, 26 Seminary was grandfathered for parking. ***Exhibit "C.[3]"***

b.      26 Seminary lacked the bulk requirements to meet the new enacted zoning code.

21.   Therefore, Mr. Chadwick did not mention any commercial space because it did not have commercial space. The testimony of Mr. Chadwick conformed precisely to the 1983 ordinance of which Mr. Chadwick was an expert.

22.   If, however, 26 Seminary Avenue had a commercial space in the first floor, and Mr. Chadwick failed to disclose it, Mr. Chadwick falsely represented to Plaintiff that 26 Seminary was a legal non-conforming three family house, concealed from Plaintiff that one floor was commercial which would have required conversion to residential use. Therefore, Defendants caused Plaintiff to purchase a property that was a lemon and caused Plaintiff substantial financial hardship and damages and years of emotional distress. Defendants are thus liable to Plaintiff for damages.

23.   Article XII, of the 1983 **Appendix A, Nonconforming Use of Buildings, Structure and Land, §1202, Transference,** states the following: "Nonconforming use rights, subject to the provisions of this Article XII, remain with the land when title is

---

[3] Only limited pages are provided at this time.

transferred." *See **Exhibit "C"***, pages 140-141. The transfer to a new ownership in 2007 was with all the benefits of nonconforming use which were also grandfathered by its language as to all future uses: *"any subsequent amendment thereof."*

24. On July 11, 2007, Plaintiff expended the money and purchased 26 Seminary Avenue on the proposition that Plaintiff could build a three-family house on the property, in accordance with, and in reliance on Mr. Chadwick's letter.

25. When the property located at 26 Seminary was purchased by the LLC – which is in an R-3 District permitting dwellings of more than two units – the three-story building contained: (1) an empty space on the ground floor; (2) two apartments on the second floor; and (3) one apartment on the third floor.

26. As stated above, 26 Seminary was classified as non-conforming when the city ordinance was introduced in 1983 due to the fact that it lacked parking in accordance with the requirements of the 1983 ordinance. Therefore, the property was classified as a legal non-conforming. A legal three family but not conforming with the parking requirements of the 1983 ordinance. This was the faith of other properties in the city. Therefore, all properties that did not confirm to the new ordinance were classified as legal - Non-Conforming in lieu of taking them off the map by classifying them as illegal.

27. There is no record to suggest that prior to 1983 parking was a requirement or that in the 1970s parking was required by the city zoning at all. Therefore, when Defendants argued to the Courts that Plaintiff required parking because of a change of use,

Defendants committed fraud upon the courts and fraud upon Plaintiff. The appearance of a commercial space was merely a remnant of an abandoned space from the 1980s.

28. Parag. 1206 of the 1983 Code reads:

**Change of use of nonconforming building, structure or land.**

"The nonconforming use of any building, structure or land may be changed to a use only permitted in the district (R-3) or by a use variance granted by the Board of Appeals to another nonconforming use. When a nonconforming use has been changed to a conforming use it shall not be subsequently be changed back to any nonconforming use." *Id.*, page 142.

29. It is clear from the language of §1206 that once the nonconforming use was abandoned or discontinued "may be changed" provided an 'as of right' restoration to a use "only permitted in the district. The district was R-3 residential. Renewal of the nonconforming required a review by the board of appeals.

30. Parag. 1207 of the 1983 Code reads:

**Cessation of use of nonconforming building, structure or land.**

"If any nonconforming use of a building, structure or land ceases, for any reason, for a period of 12 consecutive months, or a total of 16 months in any two-year period, such nonconforming use shall not thereafter be reestablished. Any future use of such building, structure or land shall be in conformity with the standards specified by this ordinance for the district in which such building, structure or land is located." *Id.*

9

31. Clearly the district was R-3 and the change of use of the first floor from commercial to residential was as of right. Of specific interest, the fact that the commercial use was abandoned and restored itself to the district zoning, R-3, the return to nonconforming use was by application to the zoning board only.

32. When the commercial use was abandoned for over 12 months, as of right, it restored itself to a use only permitted "in the district," which was R-3, more than two family. There is no record to suggest that any permits or any hearings were required. It is also clean that site plan review was not required. *See infra* ¶33.

33. **Article XII, Nonconforming Use of Building, Structure and land, §1201** reads:

Continuance of Existing buildings, structures and uses states the following:

"The lawfully permitted use of any building, structure or land existing at the time of adoption of this ordinance, **or any subsequent amendment thereto,** may be continued in accordance with the provisions of Article XII even though such use does not conform to the regulations and standards specified herein for the district in which such building, structure or land is located. For the purpose of this ordinance, a nonconforming use will be **vested** if at the time of adoption of this ordinance, or any subsequent amendment thereof, the property owner has expanded substantial sums in reliance on valid permits issued by the City of Binghamton for a use which was permitted prior to the adoption of this ordinance, or any subsequent amendment thereof, and shall not be required to

comply with the **site plan review** procedure as set forth in Article IX of the zoning ordinance." *Id*.

A. The non-conforming use as a residential three family was a permitted use prior to the adoption of the ordinance and *any subsequent amendment thereto*, therefore 26 Seminary was grandfathered at the time Plaintiff purchase was completed in July 2007.

Defendant Seachrist on grandfathering:

> "The problem that he is having is that the building has been
>
> vacant for so long. That a lot of the non-conforming grandfathering that would have occurred if it had been used continuously has expired, and so to bring it back up, to bring it, to put it back into use, it has to go through the zoning process." ***Exhibit "D"***, Page 19 at 20.

The zoning code of 1983 has no support for this argument. This argument was pulled out of Defendant's Seachrist shoes only to continue the taking of 26 Seminary Avenue and deny its permits and destroy Plaintiff.

B. Plaintiff relied on the letter given by Chadwick the authority of the City.

C. Plaintiff expanded a substantial sum in purchasing and renovation and therefore had vested rights.

11

D. Plaintiff relied on valid permits issued by the City of Binghamton for a use which was permitted prior to the adoption of the ordinance.

E. Plaintiff did not require a site plan review.

Deposition of Mr. Chadwick as site plan: *Exhibit "B", Page 73 at 23 to 74 at 3.*

Q. At the time these applications were submitted, and the permits were issued, was series A site plan approval required for the type of development that was being proposed?

A. No.

34. Clearly, 26 Seminary Avenue was grandfathered and protected from any changes or the introduction of any new ordinances including 9-2009 of March 2009.

35. 9-2009 was enacted in 2009 which defendants enforced upon Plaintiff to comply with ignoring the language of the 1983 **Appendix A** and the fact that 26 Seminary was grandfathered.

36. Hereafter, Plaintiff requested building permits and among others, the following permits were granted:

- January 7, 2008 Plaintiff obtained a permit to install sub flooring. *See Exhibit "E."*

- May 2, 2008 Plaintiff obtained a permit to frame walls and partial sheetrock. *See Exhibit "F."*

- On June 27, 2008 Plaintiff obtained an electrical permit to install wiring. *See Exhibit "G."*

37. It is undisputed that the permits given were 'typical' to all three floors. In the trade, the meaning of "typical" is that all floors are the same. Clearly this was indicated on the drawings in support of the applications to the permits.

38. On March 16, 2009, the City Council adopted, and former Mayor Matthew Ryan signed into law Ordinance

39.

40.

41. 9–2009 (the "Ordinance") which amended certain sections of Chapter 410 of the Code of the City of Binghamton ("City Code").

42. A month prior to the introduction of the new ordinance, all permits were cancelled without Plaintiff's knowledge.

## DEFENDANTS' SCHEME AGSINST PLAINTIFF
## RE: CHANGE OF USE

43. When Plaintiff was made aware that the permits were cancelled, Plaintiff made requests for new permits but was forced to comply with the new ordinance 9-2009 and apply for a variance for minimum off-street parking. According to Defendants, Plaintiff was making a 'change of use' of the first floor from commercial to residential and therefore a parking variance would now be required.

13

44. The commercial space had been vacant for over 12 years, with the first floor previously being used for a variety of businesses, including a craft and grocery store.

45. Plaintiff was forced to work with the Zoning and Planning Commission Boards to qualify for new permits on the proposition that Plaintiff was "changing the use" of the first floor from commercial to residential. According to the Defendants, such conversion triggered the parking requirements, which Plaintiff did not have but was grandfathered by the ordinance of 1983.

46. Later, sometime in late 2017, Plaintiff discovered that the 'change of use' was merely an excuse to implement a taking of Plaintiff's property. Based solely on Defendants' hatred and ill-will towards Plaintiff, Defendants commenced a regulatory taking of the 26 Seminary property using the phantom conversion of the first floor from commercial to residential merely as an excuse. Upon the discovery of the 1983 **Appendix A** in August 2018, it is now confirmed that no change of use was taking place. Any change of use was 'as of right' and took place immediately after the commercial was discontinued, sometimes in the 80's.

47. On June 5, 2009, Plaintiff presented the Zoning Board with a plan to provide six parking spaces for 26 Seminary and four spaces for 31 Seminary, a property located across the street. Said proposal was denied by the Zoning Board.

48. On January 5, 2010, Plaintiff appeared before the Zoning Board on Plaintiff's application for a variance for 26 Seminary for the number of parking spaces required

14

for a three-unit, nine-bedroom dwelling. Defendant Seachrist was in attendance. See *Exhibit "D."*

49. Plaintiff demonstrated that 26 Seminary had been grandfathered with no parking requirements, see *supra,* that permits had been issued, and that from July 2007 through January 2009, work had been performed and expenses were incurred up until the time when the permits were wrongfully revoked while new permits were refused. Plaintiff had no knowledge of **Appendix A**, the 1983 ordinance which caused 26 Seminary to be grandfathered.

50. In addition, because the non-conforming use designation of the first-floor commercial space had expired[4] based on its over-twelve-year vacancy, the parking requirement was inapplicable. Accordingly, the application was in full compliance with all applicable state and municipal requirements, thus eliminating any element of discretion or judgment remaining for the Zoning Board to exercise in determining whether to issue the variance. This was later confirmed by in Mr. Chadwick's deposition testimony.

51. Substantial discussion took place concerning the supposed need for a parking variance. The Zoning Board speculated that 26 Seminary could potentially have nine vehicles at the premises and that this was impermissible.

---

[4] Then, Plaintiff did not know that it was part of the 1983 City's zoning code.

15

d.  "If he were to maintain a commercial on the first floor and do renovation on the top two floors and maintain two units there. *Id.*, P. 18 at 21.

e.  "the one issue that is raised is the fact that that commercial space has not been occupied and used as commercial space for at least twelve years, ..."*Id.*, P. 19 at 3.

f.  "The problem that he is having is that the building has been
    vacant for so long. That a lot of the non-conforming grandfathering that would have occurred if it had been used continuously has expired, and so to bring it back up, to bring it, to put it back into use, it has to go through the zoning process." *Id.*, Page 19 at 20.

Garufi[5]:

"What I am understanding basically is this property almost has no use in a way, with a commercial area downstairs. It would just have to stay vacant if he can't use it as commercial." *Id.*, Page 19 at 16.

55.  Continuously as will be demonstrated *infra*, Defendants implied that because Plaintiff was making a 'change of use' of the first floor from commercial to residential, in accordance with the new ordinance, Plaintiff required parking which

---

[5] Head of the Zoning Board.

52. It became clear that absent the granting of a parking variance – which should not have been, but was, required by the Zoning Board – 26 Seminary would not be able to utilize its property at all.

53. Excerpts from the January 5, 2010 Zoning Board Hearing demonstrate that Defendants, specifically Defendant Seachrist, knew that the property had been vacant for over 12 years and claimed that Plaintiff was changing the use of the property by converting the first floor from commercial to residential and therefore required parking. Id.

54. Defendant Seachrist on VACANCY 'CHANGE OF USE' and PARKING:

   a. "it is a, what triggers is the fact that there is a change of use, that the use, the use is changing…on the first floor and that triggers the parking requirements." *Id.*, P. 18 Line 7.

   b. "that [change of use] triggers the parking., Id, P.18 at 17.

O'Brian

   c. So if that doesn't change, then there is no parking issue, is that what you are saying?

Seachrist

16

was in contradiction with the grandfathering when **Appendix A** of 1983 was enacted. Furthermore, Defendant Seachrist could not demonstrate that because 26 Seminary was vacant for 'so long' that it lost its grandfathering. The 1983 ordinance does not support this argument anywhere.

56.   At all relevant times, Defendants had full knowledge that the first floor lost its commercial designation 20 years earlier and restored itself to residential pursuant to **Appendix A** of the zoning code of 1983. This information was known to Defendants but not to Plaintiff.

57.   Defendants knew at all relevant times that Plaintiff did not require a conversion because Defendants, and more specifically Defendants Frank and Seachris, implemented the zoning code of the City of Binghamton.

58.   Post expiration of the commercial use of the first floor in the 80's, the floor did not remain an orphan. The answer is that "Any future use of such building, structure or land shall be in conformity with the standards specified by this chapter for the district in which such building, structure or land is located" or residential R-3 zoning." *See 1983 Code §1206 ¶ 25, §1207 ¶ 26.*

59.   In other words, the commercial floor in the residential R-3 zone returned to be residential after being vacant for over 12 *consecutive* months which occurred 12-20 years earlier.

60.   The non-conforming use for any commercial application was never renewed.

18

61. It is undisputed that 26 Seminary is in an R-3 residential zone. The non-conforming use as a commercial space of the first floor was merely a temporary license to operate in residential zoning. The zoning code was adapted on June 6, 1983. Upon information and belief, there was no zoning code prior to 1983 which requiring parking.

62. No application was made to use the first floor as commercial. Plaintiff had no use for commercial space.

63. From the inception of the 26 Seminary Project, Plaintiff understood that the first floor was residential and not commercial in accordance with the letter of Mr. Chadwick.

64. At all relevant times, Defendants knew that 26 Seminary was vacant for over 12 years and therefore Plaintiff did not need a conversion of the first floor from commercial to residential and that the commercial space restored itself to residential but failed to advise Plaintiff or the boards in order to commence a taking under false pretenses.

65. If the first floor caused the property to be non-conforming use it ceased to exist at least 12 years earlier pursuant to §1207. Nonconforming use in residential district is merely a temporary license to operate in residential zoning. Once expired and remained expired the nonconforming use cannot be restored. After the expiration of 12 consecutive months, the commercial space restored itself to its prior use or as it was originally designated, residential use. Defendants failed to explain what the status of the first floor 12 months after the commercial status was expired in the 80's until Mr. Chadwick issued the letter. According to Defendants it was still

19

commercial. If it was, Chadwick falsely represented to Plaintiff that is was a three-family house and failed to indicate that it had a commercial space which will require conversion.

66. The conclusion is that, based on the 1983 ordinance, following 12 consecutive months of vacancy and failure of the owner to seek renewal of the non-conforming status, the structure resolved itself to be 'in conformity', with its prior designation, residential in a district of

R-3.

67. Since the prior and current owner did not seek to restore the non-conforming status and the structure was vacant for over twelve years, it resolved itself to residential or *__in conformity__* *with the standards specified by this chapter [the chapter in effect at the time it lost its non-conforming] for the district in which such building, structure or land is located.* This occurred 12-20 years prior to Plaintiff's purchasing the property or sometime in the 80's. Defendants cannot show that parking was required prior to the enactment of the 1983 ordinance. Yet the 1983 ordinance grandfathered 26 Seminary for parking.

68. Therefore, at the time Plaintiff purchased the property in 2007 and in accordance with Chadwick's letter, the first commercial space did not exist. Any other argument offers that post expiration of the non-conforming status, the property remains an orphan or in the alternative remained commercial and requires a "new" designation.

69.   Plaintiff believes that one day following the 12 consecutive months of vacancy[6], the commercial floor became "*in conformity with the standards specified by this chapter for the district in which such building, structure or land is located*" and turned into residential. This event took place two decades earlier. Defendants cannot show that at the time the commercial space turned to be "in conformity" that parking was a requirement. Therefore the 'change in use' was manufactured to defeat Plaintiff and commence a taking by Defendants.

## LLC Seeks Court Intervention

### The Cortland Action, Index #10-134

70. Consistently Defendants claimed a change of use, which did not exist, and Plaintiff challenged the ordinance, which did not apply in this situation because the commercial space did not exist and therefore a change in use was not required.

71. On or about March 10, 2010, the LLC, filed an article 78 petition in the Supreme Court, in and for Cortland County, New York.  (hereinafter referred to as the "Cortland Action").  Plaintiff brought forth claims for denial of equal protection under the law, denial of due process and for a declaration that the underlying Ordinance is unconstitutional.

72. Defendants' affidavit in response to the amended petition stated in relevant part:

---

[6] Despite the fact that in the 80's the city did not have the zoning code in place.

21

"In December of 2009, the Petitioners, through Isaac Levin, sought an area variance for off-street parking requirements in an R-3 residential district to facilitate the development of 26 Seminary Avenue." Exhibit "H" ¶ 55.

"The applicable zoning regulation required five (5) parking spaces, that Petitioners sought a total waiver of the parking requirements to facilitate the renovation of the building from a first-floor commercial space to three (3) three-bedrooms units."

*Id*, ¶ 56.

73. Critically, Defendants lied to the Cortland Justice. Defendant Seachrist failed to tell the Cortland judge that Plaintiff did not volunteer to enter the boards but was forced to on the proposition that Plaintiff was changing the use of the commercial floor to residential floor. When this statement was made to the Cortland Supreme Court, Defendants were aware that in accordance with the 1983 **Appendix A,** the first commercial floor restored itself to residential and was grandfathered for parking.

a. "it is a, what triggers is the fact that there is a change of use, that the use, the use is changing…on the first floor and that triggers the parking requirements." **Exhibit "D",** P. 18 Line

b. "that [change of use] triggers the parking., Id, P.18 at 17.

22

74. In response to the Cortland Action, Defendants moved to dismiss Plaintiff's claims, in part, on theories of res judicata, collateral estoppel, statute of limitations, and governmental immunity.

75. Defendants admit in their response to Plaintiff's Amended Petition within the Cortland Action that 26 Seminary Avenue "…long ago lost its legal prior-nonconforming status, in regard to parking requirements, because it sat vacant for several years before the Petitioners bought it and has since sat vacant for several more years." See *Exhibit "H"* ¶ 107. This argument was false. Defendant Seachrist failed to explain why 26 Seminary lost its parking due to vacancy when the 1983 zoning code grandfathered 26 Seminary as to parking. The 1983 zoning code does not support this argument.

76. Defendant Seachrist verbally represented to the Zoning Board that parking was triggered because Plaintiff was making a "change in use" while to the Cortland Supreme Court Justice Seachrist said that the property sat vacant for so long and therefore it lost its status as non-conforming in regard to parking. The non-conforming applied to parking and it was grandfathered by the 1983 ordinance. Seachrist sold his story as he saw fit. One story to the boards and another to the Courts.

77. Defendants continuously made representations to the Court that Plaintiff was making a "change of use" but never mentioned to the Court a secret that they only knew- that Plaintiff's first floor ceased to exist as commercial many years earlier in accordance

with the 1983 zoning code, **Appendix A**, a material factual concealment on the part of Defendants.

78. On October 5, 2011 the Cortland judge, finding that the proposed second amended petition contained sufficient allegations to plead a *prima facie* claim for selective enforcement converted the petition to an action for damages under 42 U.S.C. §1983.

### The Federal Action, Case # 11-cv-1300

79. On November 2, 2011, Plaintiffs commenced an action in The United States District Court, Northern District of New York (hereinafter referred to as the "Federal Action") against Defendants seeking damages based on Defendants' violations of Plaintiffs' constitutional rights under 42 U.S.C. §1983, including: (1) Denial of Equal Protection; (2) Denial of Substantive Due Process; and (3) Denial of Procedural Due Process.

80. In its motion to dismiss Plaintiffs' Federal Action, Defendants relied in part on their interpretation of §410-78(A), which provides:

*"Because the commercial space had been vacant for over a decade the non-conforming use in the commercial space was deemed abandoned by operation of law. Separate and aside from the Ordinance, any new "use" propose for the commercial space would be required to meet all applicable "area or bulk" requirements of the current zoning code. The proposed <u>conversion</u> of the commercial space into a residence and the combination/expansion units in the upper stories required 1.5 parking spaces per unit of five (5) parking spaces."* (11-cv-01300, Doc#34-5, Page 7 of 10).

24

81. As demonstrated above, Defendant Seachrist lied to the federal judge. At all relevant times Seachrist knew that 26 Seminary Avenue was grandfathered in accordance with the 1983 **Appendix A** zoning code, that the commercial space did not exist and parking was grandfathered for all future amendments to the ordinance. This argument stands for the proposition that the first abandoned commercial floor continued to be commercial or abandoned commercial until such time that Plaintiff came to the rescue to convert it to residential which would be a "new" use. Residential was not "new" use. The building was designated residential R-3, more than two units and the 1983 zoning code applied. No application was required, and no commercial space existed. It restored to residential R-3 many years earlier.

82. Defendants clearly omitted in their argument that the commercial space was abandoned in the 1980s. It restored itself to be **"in conformity"** with the district, R-3 or more than two units in the 1980s, and that at the time it restored itself it was grandfathered as to parking. The first fully developed zoning ordinance was established in 1983. Therefore, Defendants could not apply 2009 zoning code to the action that took place in 1980 when parking was grandfathered. (See *infra,* Chadwick's deposition, infra at ¶ 86 a, b, c, f). This argument was a clear fraud upon the Court. At all relevant times, Defendants knew that the commercial space was abandoned for over 12-20 years and it restored itself to be 'in conformity" with the district. Therefore, the letter of Chadwick did not have to tell Plaintiff that the property had a commercial space in the first floor. If it did have commercial space

25

on the first floor Defendants purchased a lemon on the account of Chadwick's letter and therefore Defendants are liable for all damages to Plaintiff.

83.  In its Decision and Order dated April 19, 2012, Judge D'Agostino:

a. Granted Defendants' motion for summary judgment on plaintiffs' substantive and procedural due process claim for 31 Seminary;

b. Denied Defendants' motion for summary judgment on plaintiffs' substantive and procedural due process claims for 26 Seminary;

c. Granted Plaintiffs' motion to amend the pleadings to include additional facts in support of the equal protection claim;

d. Denied Defendants' motion for summary judgment on plaintiffs' equal protection claim based upon a "class of one"; and

e. Granted Defendants' motion for summary judgment on plaintiffs' equal protection claim based upon "selective enforcement", with leave to amend.

84.  On November 20, 2012, Plaintiff filed a motion for partial summary judgment arguing that the Ordinance in question was "void for vagueness."

85.  Additionally, it was argued by the LLC, by and through its then-Counsel, that the Ordinance fails to prevent unrestricted delegations of power that facilitate arbitrary, selective, and discriminatory enforcement, and imbues the Planning Commission and Zoning Board with unlimited discretion.

86.  By Decision and Order dated June 5, 2013, Judge D'Agostino denied Plaintiffs' motion for partial summary judgment based upon the sparse record and lack of admissible evidence. However, the Court stated the following:

*The Court cannot find the language vague based upon confusion that plaintiffs may*

*have manufactured. At this stage of the litigation, applying common sense and everyday meaning, the Court cannot conclude, as a matter of law, that a person of ordinary intelligence would not understand the meaning of change of use" as used in the ordinance."* 3:11-cv-01300-MAD-DEP, Doc # 60, Page 17.

87. Clearly in spite of the 1983 **Appendix A,** Defendants convinced the Court that Plaintiff was making a change of use.

88. On April 29, 2014, David Chadwick was formally deposed.

89. In said deposition, Chadwick testified that:

   a. 26 Seminary, a zoning compliance letter, signed by Chadwick, was sent to Levin which stated that its use as a 3-family dwelling was a legal nonconforming use. The letter was sent because there was a request by William Thomas as to whether or not 26 Seminary was a three-family. The building was legal non-conforming because it predated any ordinance which would otherwise make it illegal. **Exhibit "B",** P. 63 Lines 13, 24. (Only relevant pages are provided).

   b. A legal nonconforming use impacts parking in that if 26 Seminary had no parking and was allowed to be that way that would continue going forward. *Id.,* Page 64 Line 12.

   c. A legal nonconforming use impacts at all things like the parking requirements of the use. *Id.,* Page 64 Line 4.

   d. Chadwick described 26 Seminary as of 2009 to be a three-story building, commercial floor space on the first floor and apartments on

the 2nd and 3rd floors and the commercial 1st floor was vacant when Chadwick saw it in 2009. *Id.*, Page 66 Line 1.

e. Chadwick did not recall that 26 Seminary had any off-street parking and could not recall if multi-family dwelling required off-street parking in 2009. Additionally, with respect to 26 Seminary, Levin applied for a couple of building permits.

f. Chadwick would not have issued a building permit for 26 Seminary if he thought the parking was inadequate. *Id.*, Page 68 Line 2.

g. Moreover, at the time the applications were submitted and the permits issued for 26 Seminary, a site plan approval was not required for the anticipated work. *Id.*, Page 73 Line 23. See *Supra.*

90. On December 1, 2014, Defendants filed a motion for summary judgment seeking dismissal of Plaintiffs' facial challenge to the Ordinance and Plaintiffs' Complaint in its entirety. In said motion for summary judgment, Defendants argued that dismissal is warranted on the grounds that: "there is simply no evidence that: (1) a person of ordinary intelligence would not understand the meaning of 'change of use' as used in the Ordinance of 2009"; (2) Plaintiffs were treated differently than similarly situated persons or based on impermissible considerations, malice, or bad faith; (3) 26 Seminary had a property interest in being granted the requested approvals or that Defendants acted in an "outrageously arbitrary and irrational" manner;' (4) 26 Seminary did not have an opportunity to seek redress via an Article 78 proceeding; or (5) application of the Ordinance to Plaintiffs was unconstitutionally vague."

28

91. In response, Plaintiffs filed a cross motion for summary judgment seeking judgment as a matter of law on their claims that Defendants violated their equal protection rights since the evidence on the record demonstrated that Defendants engaged in selective enforcement in denying plaintiffs' applications. Plaintiffs showed that they were "similarly situated" to the numerous applicants that were subject to the Ordinance and approved. In fact, during the relevant time period, plaintiffs were the only applicants denied site A approval. Plaintiffs further submitted to the Court that Defendants failed to articulate any legitimate governmental purpose for the denial of the permits or any genuine rationale for the disparate treatment.

92. On July 28, 2015, the Court issued a 47-page decision which mostly relied on the fact that Plaintiffs were seeking a "change of use." Specifically, on page 28 of the decision, the Court stated:

"Defendant Chadwick explained in his deposition testimony that the letter was a zoning compliance letter, which indicated that the use of the 26 Seminary Property on the date of the letter was legally approved as a non-conforming use. It is un disputed that at the time the letter was issued- and at the time that 26 seminary purchased the property  - the 26 Seminary Property contained a commercial space on the first floor, two residential units on the second floor and one residential unit of the third floor. Thus, Defendants Chadwick's letter does not establish that 26 Seminary was clearly entitled to convert the 26 seminary Property from its prior legal non-conforming use to a different non-conforming use without seeking

different non-conforming use without seeking the requisite approvals." (3:11-cv-01300-MAD-DEP, Doc # 129, Page 28)

93. Because Defendants perpetrated a fraud upon the Court and continued to argue that Plaintiffs were seeking a "change of use," the Federal Court overlooked two significant factors applicable to Plaintiff: (1) A property is not evaluated what it is at the time of the purchase and therefore it was **irrelevant** what Plaintiff found at the time of purchase. A property in case of the COB is evaluated base on the Zoning Ordinance of the City of Binghamton; and (2) Chadwick did not have to establish in his letter that "Defendant Chadwick letter does not establish that 26 Seminary was clearly entitled to convert the 26 Seminary Property from its prior legal non-conforming use to a different non-conforming use without seeking the requisite approval."

94. As shown *supra*, Chadwick did not have to establish anything because the property did not have any commercial space post the 12 consecutive months of vacancy in the 80s.

95. The Court's decision, when read with the 1983 **Appendix A** which was hidden from Plaintiff and the Court, lacked merit. Clearly Mr. Chadwick, an expert in the city ordinance, did not say anything in the letter of July 3, 2007 that the first floor required a conversion. According to the 1983 Code, **Appendix A,** the commercial space did not exist and therefore a 'change of use' was merely a fraud upon the court and a fraud upon Plaintiff, a phantom that Defendants created to defeat Plaintiff, cause him

30

financial harm and perpetrate an unpaid taking of Plaintiff's property.

96. Plaintiff was not aware of the 1983 code **Appendix A**, while Defendants were aware at all times but preferred to perpetrate a fraud upon the Court, continuing with summary judgment when they could have stopped the litigation.

97. As a result, Defendants caused a regulatory taking of Plaintiff's property causing years of damage to the property and years of financial damages to Plaintiff and those associated with plaintiff.

98. On December 8, 2015, Plaintiffs timely appealed the District Court's grant of summary judgment in Defendants' favor with the United States Court of Appeals for the Second Circuit. Plaintiff's petition sought to vacate the order of summary judgment and find that animus can never serve as the grounds for a government's decision. Plaintiffs submitted on appeal that although courts properly fear turning run-of-the-mill zoning cases into cases of constitutional rights, this case "is not one of them." Docket # 15-cv-2646.

99. Additionally, Plaintiffs' petition on appeal demonstrated that a jury could easily find that the City and its officials discriminated against Plaintiff in canceling his permits and denying variances – all after passing an Ordinance aimed at his properties. Such conduct constituted the deprivation of Plaintiff's valid property interest in an outrageous manner.

100. On May 23, 2016, Defendants argued against the petition by stating that Plaintiffs' Selective Enforcement theory was not supported by evidence and that Plaintiffs

31

failed to demonstrate animus or bad faith.

101. Defendants further argued that summary judgment was properly granted on the grounds that Plaintiffs failed to demonstrate that they had a Property Interest in a Zoning Variance relative to parking at 26 Seminary and that Plaintiffs' Substantive Due Process Claim was properly dismissed for lack of evidence that Defendants acted in an "Outrageously Arbitrary and Irrational" Manner.  In furtherance of their arguments, Defendants asserted that the first floor of the building was "clearly commercial."  Plaintiffs, in response, stated that the prior use of 26 Seminary had included a commercial space on the first floor, which Plaintiffs sought to convert to a three-bedroom apartment, so that the building as proposed would contain a total of nine bedrooms on three floors. At all relevant times Plaintiff was not aware of the 1983 **Appendix A** while Defendant had full knowledge of it.

102. On February 26, 2016, Plaintiffs filed their Reply Brief.

103. By way of Summary Order dated November 23, 2016, the Court of Appeals for the Second Circuit affirmed the District Court's grant of summary judgment against Plaintiffs.

104. In July of 2017, Plaintiff filed a petition for writ of certiorari with the Supreme Court which presented the Supreme Court with the following three questions for consideration: (1) Whether, in accordance with longstanding circuit precedent, a plaintiff may succeed on an equal protection claim of "selective enforcement" by demonstrating that the disparate treatment was premised on personal animus or ill-

will toward the plaintiff. (2) Whether "selective enforcement" cases are subject to a less stringent form of the "similarly situated" test than that which applies to *Olech*-type "class of one" cases. (3) Whether proof of pretext is sufficient to overcome an asserted rational basis for government action in class of-one or selective enforcement cases.

105. On August 16, 2017 the Defendants opposed Plaintiff's petition for writ of certiorari by arguing that: "[T]his case concerns the constitutionality of certain zoning decisions made by one or more Respondents with respect to the property owned by petitioner at 26 Seminary Avenue in Binghamton, New York ("the Property"). In short, Petitioner sought to modify the use of its existing <u>mixed commercial and residential</u> structure on the Property to solely residential." City of Binghamton Ordinance 9-009 requires a minimum of 1.5 off-street parking spaces per dwelling unit in the residential area where the Property is located, thus a total of (5) off-street parking spaces were required. Petitioner represented on its variance application that it was unable to provide any off-street parking. Petitioner challenged denial of a zoning variance for parking at the Property."

106. Clearly 26 Seminary was forced to comply with 9-2009 ordinance while as shown supra it was grandfathered under the 1983 Code. If 1983 **Appendix A** is read and interpreted in context with Defendants' argument, it can be seen how Defendants committed fraud upon the various Courts in order to continue the taking of Plaintiff's property.

107. Defendants were aware of 1983 **Appendix A** code while Plaintiff was not.

108. As a result of Defendants committing fraud upon the Court, Plaintiff was involved in eight years of litigation, suffered emotional distress, and significant financial losses while the property was taken away from Plaintiff.

109. On August 25, 2018, upon information and belief, Defendants caused 26 Seminary Avenue to collapse.

110. Under 42 U.S.C. § 1983, constitutional torts are only actionable against state actors or private parties acting "under the color of" state law. *Ciambriello v. County of Nassau*, 292 F.3d at 323.

111. "In order to state a claim under § 1983, a plaintiff must allege that, first, the conduct complained of was committed by a person acting under color of state law, and, second, that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912-13, 68 L.Ed.2d 420 (1981).

112. Each and all of the acts of the Defendants alleged herein were committed by the Defendants, their agents, employees, and servants, under the color and pretense of the laws, statutes, ordinances, regulations, policies, customs and/or practices of the State of New York and/or the City of Binghamton, and under the authority of their respective offices as agents, employees, and/or servants of the State of New York and/or the City of Binghamton.

113. Accordingly, at all times material herein, Defendants were acting under the color of

state law.

114. The Planning Commission holds a policy making role and has final decision-making authority with respect to permit and site plan applications and the enforcement of the Ordinance, and the City is accountable and responsible for its actions.

115. Defendants acted, and knew of, condoned, encouraged, insisted upon, and/or enforced a policy, custom or practice of enforcing the Ordinance, in a manner that is arbitrary, unequal, and/or based upon no legitimate reason or rational interpretation of the law.

116. The deprivation of Plaintiff's federally protected rights was caused by the Defendants' enforcement of the foregoing Ordinance, policies, customs, and/or practices and their wrongful acts described herein.

117. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been individually damaged.

## COUNT I:
### (Declaratory Judgment)

118. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

119. The Declaratory Judgment Act ("DJA") provides: "In a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration..." 28 U.S.C. §

35

2201(a).

120. An actual, present and justiciable controversy has arisen between the parties.

121. As a result of the foregoing, pursuant to 28 U.S.C. §2201, Plaintiff seeks a declaration from this Court that:

    a. The enacted ordinance 9-2009 on March 16, 2009, did not apply to 26 Seminary Avenue, and

    b. In accordance with the Zoning Code of 1983 **Appendix A** 26 Seminary Avenue did not have a commercial space on the first floor July 3, 2007, and

    c. Ordinance 9-2009 was interpreted and applied in an unconstitutional manner to the detriment of Plaintiff.

## COUNT II:
## (Fraud Upon the Court)

122. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

123. The New York state statute of limitations for fraud contains its own discovery rule: "an action based upon fraud . . . must be commenced [within] the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8).

124. Plaintiff's cause of action accrued on July 28, 2015 with the erroneous entry of

36

summary judgment. Accordingly, Plaintiff's claims brought herein are timely.

125. "'[F]raud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication." (citing *Kupferman v. Consol. Research & Mfg. Corp.*,459 F.2d 1072, 1078 (2d Cir. 1972)).

126. Fraud upon the court should embrace "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Hadges v. Yonkers Racing Corp*, 48 F.3d at 1325 (quoting *Kupferman*, 459 F.2d at 1078 (internal quotation marks omitted)).

127. Indeed, relief from a final judgment may also be obtained at any time by way of an independent action to set aside a judgment for "fraud upon the court." Although both clause (3) and the saving provision of Rule 60(b) provide for relief from a judgment on the basis of fraud, the type of fraud necessary to sustain an independent action attacking the finality of a judgment is narrower in scope than that which is sufficient for relief by timely motion. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244-46 64 S.Ct. 997, 1000-01, 88 L.Ed. 1250 (1944); *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir.) (per curiam), cert. denied, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972); *Dankese Eng'g, Inc. v. Ionics, Inc.*, 89 F.R.D. 154, 157-58 (D.Mass.1981); see generally 7 J. Moore, Federal Practice ¶ 60.33, at 360-62 (2d ed. 1987).

128. "Fraud upon the court," as distinguished from fraud on an adverse party, is limited to fraud which seriously affects the integrity of the normal process of adjudication. See *Kupferman*, 459 F.2d 1072, 1078 (2d Cir.1972); 7 Moore ¶ 60.33, at 360.

129. Defendants perpetrated a fraud upon the Court when they argued that Plaintiff was seeking to change the use of the first floor from commercial to residential while at all relevant times they knew that a commercial space on the first floor did not exist.

130. Defendants made such fraudulent representations to the Cortland Court, The District Court, The Court of appeals for the second circuit and the Supreme Court.

131. The Court relied on such representations.

132. As a direct result of Defendants' fraudulent conduct, a summary judgment against Plaintiff was improperly entered on July 28, 2015, resulting in damages.

## COUNT III:
### (42 U.S.C. § 1983 – Substantive Due Process)

133. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

134. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

135. Plaintiff had a valid property interest in a benefit that was entitled to constitutional protection.

136. Defendants infringed upon Plaintiff's property interest in a manner that is arbitrary

38

or irrational and/or based upon no legitimate reason or rational interpretation of the law.

137. Defendants' actions were so outrageously arbitrary, conscience shocking or oppressive as to constitute a gross abuse of governmental authority.

138. As a result, Plaintiff has suffered damages, and continues to suffer damages, in an amount to be determined at trial.

## COUNT IV:
### (42 U.S.C. § 1983 – Procedural Due Process)

139. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

140. Plaintiff had a valid property interest in a benefit that was entitled to constitutional protection.

141. Prior to the enactment of the Ordinance, Plaintiff, pursuant to the 1983 **Appendix A,** was entitled to permits as-of-right which were not subject to the discretion of the Defendants.

142. Prior to the enactment of the Ordinance, Plaintiff made substantial improvements to and expenditures in connection with the subject property.

*143.* Plaintiff had vested right in the property. See ¶ 33 and **§1201,** *Exhibit "C"*

144. Plaintiff was denied its valid property interest.

145. Defendants denied Plaintiff's applications without explanation in violation of their right to procedural due process.

146. As a result, Plaintiff have suffered damages, and continue to suffer damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) A declaration, pursuant to 28 U.S.C. § 2201, that, (A) the Zoning Code of 1983 **Appendix A,** was the valid zoning code to be applied to 26 Seminary Avenue; (B) in accordance with the Zoning Code of **1983 Appendix A,** 26 Seminary Avenue did not have a commercial space on the first floor on July 3, 2007 and in fact was residential in accordance with the R-3 district; (C) The enacted ordinance 9-2009 on March 16, 2009, is unconstitutional as applied to the Plaintiff; and (D) The enacted ordinance 9-2009 on March 16, 2009, did not apply to 26 Seminary Avenue;

(b) An order rendering the underlying order of summary judgment, entered on July 28, 2015, void as a matter of law;

(c) An award of compensatory damages, treble damages and punitic damages, reasonable attorneys' fees and costs expanded in the past pursuant to 42 U.S.C. § 1983 and any other applicable provisions of law; and

(d) Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all triable issues of fact.

Dated: November 2, 2018

Respectfully submitted,

ISAAC LEVIN
Pro Se Plaintiff

960 Cliffside Avenue
N. Woodmere, NY 11581
Isaaclevin2010@gmail.com
1.516.374.0188