UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ISAAC LEVIN,

                            **Plaintiff,**

  vs.                                                          3:18-CV-1292
                                                                    (MAD/DEP)

**KENNETH J. FRANK,** *individually and as Corporation Counsel for the City of Binghamton*, **BRIAN SEACHRIST,** *individually and as first Corporation Counsel*, **and THE CITY OF BINGHAMTON,**

                            **Defendants.**
_____

**APPEARANCES:**                                      **OF COUNSEL:**

**ISAAC LEVIN**
960 Cliffside Avenue
North Woodmere, New York 11581
Plaintiff *Pro Se*

**HANCOCK ESTABROOK, LLP**              **DANIEL B. BERMAN, ESQ.**
1500 AXA Tower I                                 **EMER STACK, ESQ.**
100 Madison Street
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     This case relates to a prior action brought by Plaintiff's limited liability companies against Defendants Kenneth J. Frank, the City of Binghamton ("Binghamton"), and several other defendants. *See 33 Seminary LLC v. City of Binghamton*, 120 F. Supp. 3d 223, 231 (N.D.N.Y. 2015) (hereinafter, "*33 Seminary I*"), *aff'd sub nom. 33 Seminary LLC v. The City of Binghamton*, 670 Fed. Appx. 727 (2d Cir. 2016) (hereinafter, "*33 Seminary II*"). In the present action, Plaintiff

alleges that Defendants violated his substantive and procedural due process rights and committed fraud upon the court in *33 Seminary I*. *See* Dkt. No. 21 at 34-38. Additionally, Plaintiff requests a declaratory judgment from the Court. *Id.*

Presently before the Court is Defendants' Motion to Dismiss and Plaintiff's Motion for Reconsideration of the Court's decision to deny a preliminary injunction. *See* Dkt. Nos. 24, 26. For the following reasons, the Motion to Dismiss is granted and the Motion for Reconsideration is denied as moot.

## II. BACKGROUND

### A. Facts

Plaintiff is the controlling member in 26 Seminary LLC (the "LLC"), a limited liability company that he created to purchase property located at 26 Seminary Avenue in Binghamton, New York (the "Property") in a multifamily residential zoning district. *33 Seminary I*, 120 F. Supp. 3d at 233. When the LLC purchased the Property in 2007, it contained a building with empty commercial space on the ground floor, two apartments on the second floor, and one apartment on the third floor. *Id*. Additionally, the Property did not have any off-street parking. *See* Dkt. No. 21 at 6.

In 2009, Binghamton adopted Ordinance 009-009, which increased the amount of off-street parking that certain residential buildings are required to have. *33 Seminary II*, 670 Fed. Appx. at 729. The new parking requirements are triggered "when a building owner sought to modify the use of an existing structure on the property." *Id.* Soon after Ordinance 009-009 was adopted, the LLC attempted to renovate and modify the use of parts of the building on the

Property. *Id.* The LLC applied for a variance from Ordinance 009-009's parking requirements, which the town denied.¹ *Id.*

**B.     Prior Lawsuit**

On November 2, 2011, Plaintiff's companies brought a lawsuit alleging that Ordinance 009-009 was unconstitutionally vague and arguing that the denial of certain building permits and variances violated the companies' rights under the Due Process and Equal Protection Clauses. *See 33 Seminary I*, 120 F. Supp. 3d at 231. On July 28, 2015, this Court granted summary judgment against the plaintiffs, which the Second Circuit affirmed on November 23, 2016. *See 33 Seminary II*, 670 Fed. Appx. at 730-31; *see also 33 Seminary LLC v. City of Binghampton* [sic]*, N.Y.*, 138 S. Ct. 222 (2017) (denying *certiorari*).

**C.     Present Lawsuit**

On August 25, 2018, Defendants demolished the building on the Property after it partially collapsed.² *See* Dkt. No. 21 at 33. On November 5, 2018, Plaintiff commenced this action in his individual capacity, claiming that Defendants' actions were directed at him because "[t]he LLC was merely a shell that was used to purchase [the Property]." *Id.* at 3. Plaintiff alleges that "[a]s an investor in the LLC, Plaintiff . . . personally suffered emotional distress and financial losses because of Defendants' wrongful conduct against [the Property]." *Id.* at 2. Additionally, Plaintiff claims that in August 2018, he discovered an Appendix A to the 1983 zoning code ("Appendix

---

¹ The town determined that the Property needed to have five off-street parking spaces, but the LLC claimed that it was unable to provide any off-street parking. *33 Seminary II*, 670 Fed. Appx. at 729.

² Plaintiff alleges that Defendants intentionally demolished the building on the Sabbath, so Plaintiff would not discover that the building had been demolished until 9:50 p.m. *See* Dkt. No. 21 at 33 (stating that "[i]t has been a practice of the anti-Semites to hurt the Jewish population on Saturday knowing that they could not be found or could be found for various degrees of abuse").

A") in an attic. *See id.* at 4. Relying on Appendix A, Plaintiff now argues that (1) since the building was vacant for over twelve years, the first floor of the building has reverted to a residential space, and (2) Plaintiff has the right to change the use of the space without applying for a variance from Ordinance 009-009's parking requirements. *See id.* at 9-10, 15, 17-19.

**D.     Procedural History**

On December 20, 2018, Plaintiff filed an Emergency Motion for a Preliminary Injunction, which the Court denied on December 26, 2018. *See* Dkt. Nos. 22, 23. On January 1, 2019, Plaintiff filed a Motion for Reconsideration to ask the Court to reconsider his preliminary injunction request. *See* Dkt. No. 26. Defendants opposed that motion on January 17, 2019, and Plaintiff filed his reply on January 28, 2019. *See* Dkt. Nos. 32, 36.

On December 28, 2018, Defendants moved to dismiss the action for lack of subject matter jurisdiction and failure to state a claim. *See* Dkt. No. 24. Plaintiff opposed that motion on February 19, 2019. *See* Dkt. No. 38. For the following reasons, the Motion to Dismiss is granted, and the Motion for Reconsideration is denied as moot.

### III. DISCUSSION

**A.     Standing**

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)). Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, 495 Fed. Appx. 183, 188 (2d Cir. 2012). "To demonstrate standing, a plaintiff must have

'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Salazar v. Buono*, 559 U.S. 700, 711 (2010) (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009)) (emphasis omitted).

As the Supreme Court established in *Lujan*, "the irreducible constitutional minimum of standing contains three elements:"

> First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted). The "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 191 (2000); *see also Genesis Healthcare*, 569 U.S. at 71 ("This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved").

In the context of zoning disputes, a plaintiff may have standing to sue even if the injury was directed at a third-party. *See Warth v. Seldin*, 422 U.S. 490, 504-05 (1975) (holding that "[w]hen a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was intended to prevent, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights"); *see also Cunney v. Board of Trustees of Village of Grand View*, 56 F. Supp. 3d 470,

491 (S.D.N.Y. 2014) (citing the "numerous cases holding that a party has standing to challenge an unconstitutionally applied zoning law even if the party is not the owner of the subject property"). Accordingly, a plaintiff with a membership interest in a limited liability company that owns property may have standing to sue for personal financial losses that resulted from harms to the property because he "ha[s] an interest in the subject property even when [the LLC] [is] the property owner." *See id.* at 492.

Still, in order to allege an injury-in-fact, the plaintiff must identify a specific project that he invested in and the town denied. *See Warth*, 422 U.S. at 516 (finding no standing because the plaintiffs did not identify a specific project that was precluded by the town's ordinance and had not alleged that the plaintiffs applied for "a building permit or a variance with respect to any current project"). Standing may be found if the individual has "expended time, money, and effort in developing [renovation plans], soliciting and receiving professional services, and preparing and submitting its proposals and applications to [the town]," and has "suffered some loss of potential profits, income, or fees as a result of [the town's] actions." *See Anderson Grp., LLC v. City of Saratoga Springs*, No. 1:05-CV-1369, 2011 WL 2472996, *3 (N.D.N.Y. June 21, 2011) (hereinafter, "*Anderson Grp. I*"), *rev'd on other grounds*, *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34 (2d Cir. 2015) (hereinafter, "*Anderson Grp. II*"). Finally, in the Second Circuit, "the denial of an entity's special-use permit application . . . is an injury sufficient in itself to confer standing." *Anderson Grp. II*, 805 F.3d at 46 (citations omitted).

"For purposes of ruling on a motion to dismiss for want of standing, [the court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501 (1975). Finally, "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings

6

drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).  The Second Circuit has opined that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

In this case, Plaintiff has sufficiently alleged a personal stake so as to warrant the jurisdiction of this Court.  *See Salazar*, 559 U.S. at 711.  Plaintiff alleges that Defendants denied the LLC's variance application in 2010 and demolished the building on the Property on August 25, 2018.  In Plaintiff's opinion, such conduct amounted to a regulatory taking of the Property and caused Plaintiff, as "an individual investor and the managing member [of the LLC]" to suffer emotional distress and financial losses, including ten years of rental income.[3]  *See* Dkt. No. 38 at 11 (emphasis omitted); Dkt. No. 21 at 2, 14, 30, 32.  The denial of the variance is an injury sufficient in itself to confer standing.  *See Anderson Grp. II*, 805 F.3d at 46.  Additionally, the alleged financial harms are concrete and particularized, even if their actual value is "subject to considerable infirmities."  *See Anderson Grp. I*, 2011 WL 2472996, at *3 (finding financial harms to be injuries-in-fact even though the actual value of the losses may be "subject to considerable infirmities"); *see also Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing").  These harms were caused by Defendants' conduct and can be redressed by an order from this Court.  As such, the Court finds that Plaintiff has standing to sue.

---

[3] Plaintiff attempts to quantify the lost rental income, alleging that "[a]nnual rent for the house with five bedrooms would amount to $90,000 (at $500 per bedroom) or a total of $900,000 for ten years."  *See* Dkt. No. 21 at 39.

7

Defendants argue that Plaintiff does not have standing because he did not own the Property until December 7, 2018. *See* Dkt. No. 24-1 at 15-16. Plaintiff, however, had a membership interest in the LLC that owned the Property before he did. *See Cunney*, 56 F. Supp. 3d at 492. Moreover, Plaintiff personally appeared at a public hearing on behalf of the LLC to support his variance application. *See 33 Seminary I*, 120 F. Supp. 3d at 235; *Cunney*, 56 F. Supp. 3d at 492 (attributing significance to the fact that the plaintiff himself, and not his LLC, had applied for the certificate of occupancy that was denied by the town, and which he was challenging in the lawsuit). Therefore, standing is not precluded by the fact that Plaintiff owned the Property through the LLC until December 2018.

Defendants also argue that Plaintiff lacks standing because his claims are derivative. *See* Dkt. No. 24-1 at 15-16. Under New York law, members of an LLC may sue derivatively where the remedy sought is for the wrong done to the business entity, but sue in their individual capacity when the "'primary injury' for which relief is sought directly affects an interest the plaintiff holds." *See Bartfield v. Murphy*, 578 F. Supp. 2d 638, 646 (S.D.N.Y. 2008) (citing *Excimer Assocs. v. LCA Vision, Inc.*, 292 F.3d 134, 139-40 (2d Cir. 2002)); *see also Tzolis v. Wolff*, 10 N.Y.3d 100, 109 (N.Y. 2008). Here, Plaintiff's alleged injuries are direct in nature, since he alleges financial and emotional harm that he personally suffered due to Defendants' conduct. Accordingly, the Court finds that this is not a derivative action.

**B.     Failure to State a Claim**

*1. Legal Standard*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). To survive dismissal for failure to

state a claim, a party need only present a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned" recitation of the alleged misconduct. *Id.* (citations and quotation omitted).

In considering a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

### 2. Due Process and Equal Protection Claims

First, Defendants claim that the Section 1983 claims must be dismissed as untimely. *See* Dkt. No. 24-1 at 25-26. Section 1983 actions filed in New York are governed by a three-year statute of limitations, *see* N.Y. C.P.L.R. § 214(5), which accrues, "when the plaintiff knows or has reason to know of the injury which is the basis of his action," *see Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citation omitted). Plaintiff has alleged that Defendants demolished the building on the Property on August 25, 2018, which caused him financial and emotional harms. *See* Dkt. No. 21 at 32-33. Therefore, Plaintiff has alleged injuries that occurred within the relevant time period, and the Section 1983 claims are timely.

Defendants next argue that *res judicata* bars Plaintiff's constitutional claims. The doctrine of *res judicata*, or claim preclusion, applies if a defendant can show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 426 (S.D.N.Y. 2008) (noting that *res judicata* applies equally to *pro se* litigants). When *res judicata* challenges are raised in a motion to dismiss for failure to state a claim, dismissal is appropriate if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

"Determining whether two parties are in privity often requires a court to inquire whether a party controlled or substantially participated in the control of the presentation on behalf of a party to the prior action." *Burberry Ltd. v. Horowitz*, 534 Fed. Appx. 41, 44 (2d Cir. 2013) (citing *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)) (finding privity where the plaintiff was aware during the first lawsuit of the "close relationship" between an online retail business and the business's "principal, sole shareholder and sole officer"). The privity doctrine does not require the parties' interests to be identical, only that they are "aligned." *Id.* at 45. Finally, courts have held that owners are in privity with their companies when the owner "was the admitted mastermind and financier of the [earlier] litigation and [was] providing similar tactical and financial help" in the second action. *Alpert's Newspaper Delivery Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989); *see also Lia v. Saporito*, 541 Fed. Appx. 71, 73 (2d Cir. 2013) (finding privity between an LLC and the plaintiff,

who was the LLC's 75% owner, sole manager, and sole financier); *Svenningsen v. Ultimate Prof'l Grounds Mgmt., Inc.*, No. 14-CV-5161, 2017 WL 3105871, *4 (S.D.N.Y. July 20, 2017) (stating that "[p]rivity is generally found when the party to the previous litigation was the sole or managing member of a closely held corporation").

Once a final judgment has been entered by a court of competent jurisdiction, "the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (internal citation and quotation marks omitted); *see also Nat'l Labor Relations Bd. v. United Techs. Corp.*, 706 F.2d 1254, 1259 (2d Cir. 1983) ("Such a judgment precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first action and of issues that could have been raised in the adjudication of that claim"). "New York takes a transactional approach to res judicata: 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Yeiser*, 535 F. Supp. 2d at 422 (quoting *Sosa v. J.P. Morgan Chase Bank*, 822 N.Y.S.2d 122, 124 (2d Dep't 2006)).

Here, Plaintiff's Section 1983 claims are barred by *res judicata*. First, the Section 1983 claims in this case are nearly identical to those raised in *33 Seminary I*, which the Court adjudicated on the merits when it granted the defendants' motion for summary judgment in *33 Seminary I*. *See* Dkt. No. 23 at 10 (comparing the constitutional claims in this action with the prior action); *Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 715 (2d Cir. 1977) (holding that summary judgment is a judgment on the merits for *res judicata* purposes). Second, Defendants Binghamton and Frank were both defendants in *33 Seminary I*, while Defendant

Seachrist and Plaintiff are in privity with the parties in the prior action. Defendant Seachrist is in privity with the defendants in *33 Seminary I* because, as Binghamton's Assistant Corporation Counsel, he "controlled or substantially participated" in the prior case. *See* Dkt. No. 21 at 3 (alleging that "Defendant Seachrist acts as a surrogate of Frank. All his actions are directed by Frank" and that "Corporation Counsel and Assistant Corporation Counsel are responsible for all legal activities related to the City, including representing the [City] . . . in federal, state, and local courts"). Similarly, as the controlling member of the companies who brought *33 Seminary I*, Plaintiff is in privity with the plaintiffs in the earlier action. *See Alpert's Newspaper Delivery*, 876 F.2d at 270; *Lia*, 541 Fed. Appx. at 73; *Svenningsen*, 2017 WL 3105871, at *4. Thus, the Court finds that *res judicata* bars Plaintiff's equal protection and due process claims.

Plaintiff distinguishes the Section 1983 claims from *33 Seminary I* by claiming that Appendix A, which he recently discovered, grants him a "vested right in the property." *See* Dkt. No. 21 at 38. Newly discovered evidence may prevent the application of *res judicata* where that evidence "was either fraudulently concealed or when it could not have been discovered with due diligence." *See Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991) (internal citation omitted). Appendix A, however, is part of a town code, and is not evidence. *Porter v. Shineski*, 650 F. Supp. 2d 565, 568 (E.D. La. 2009) ("[s]tatutes are not evidence"); *see also* Evidence, Black's Law Dictionary (10th ed. 2014) (defining evidence as something that "tends to prove or disprove the existence of an alleged fact"). Even if Appendix A was evidence, Plaintiff claims that he only now discovered Appendix A because he "started the research only recently." *See* Dkt. No. 38 at 16-17. Although Plaintiff attempts to blame Defendants for his oversight by stating that Defendants were "aware at all times" that Appendix A existed, he has not alleged that Appendix A was fraudulently concealed or was not otherwise discoverable sooner with due

diligence, and Defendants were not required to inform Plaintiff of the existence of an old town code.[4]  *See* Dkt. No. 21 at 30.  Thus, the Court finds that Plaintiff could have discovered Appendix A sooner and raised his "vested right" argument in *33 Seminary I*.

As such, the Section 1983 claims must be dismissed.

### 3. *Request for Declaratory Judgment*

Plaintiff requests that the Court issue a declaratory judgment stating that (1) Ordinance 009-009 does not apply to the Property, (2) "[i]n accordance with the Zoning Code of 1983 Appendix A 26 Seminary Avenue did not have a commercial space on the first floor July 3, 2007," and (3) "Ordinance 9-2009 was interpreted and applied in an unconstitutional manner to the detriment of plaintiff."  *See* Dkt. No. 21 at 34-35.

The Declaratory Judgment Act provides, in part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The "actual controversy" requirement under the Declaratory Judgment Act is coextensive with Article III's case or controversy requirement.  *See Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937)). "The requirement of actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory judicial rulings."  *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993); *see also Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d

---

[4] Despite alleging that Defendants perpetrated fraud on the court, Plaintiff does not allege that Defendants fraudulently concealed Appendix A.  *See* Dkt. No. 21 at 4-5, 32 (claiming that "Defendants withheld crucial information from Plaintiff and the courts"); *id.* at 8-9, 25, 29-30, 36 (claiming that the defendants' arguments that the first floor space was commercial and that the LLCs sought a change of use were fraudulent).

1278, 1291 (Fed. Cir. 2008) (noting that the concepts of standing, ripeness, and mootness bear on whether a case is justiciable under Article III of the Constitution) (citation omitted).

"The doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003) (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)). Collateral estoppel is permitted if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (citation and internal quotation marks omitted). Importantly, "[t]hese four factors are required but not sufficient," because in addition, "a court must satisfy itself that application of the doctrine is fair." *Bear, Stearns & Co. Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)) (other citation omitted). "'Full and fair opportunity to litigate requires identity of parties or privity of parties, and a practical inquiry into the realities of the [previous] litigation." *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, No. 02-CV-0099, 2004 WL 724690, *7 (S.D.N.Y. Mar. 26, 2004) (internal citation and quotation marks omitted).

First, Plaintiff asks the Court to declare that Ordinance 009-009 does not apply to the Property. *See* Dkt. No. 21 at 34-35. This Court rejected that argument in *33 Seminary I*, when the plaintiffs argued that a letter they received from the town grandfathered the Property as a three-family home before Ordinance 009-009 was enacted. *33 Seminary I*, 120 F. Supp. 3d at 246. The Court noted that "[a]s [the] [p]laintiffs did not seek to continue the legal non-conforming use of the property, [the] [p]laintiffs' argument that they acquired a vested right

in a *different* non-conforming use of the property is contrary to New York law, which recognizes that 'a [legal] nonconforming use that predates the enactment of a restrictive zoning ordinance is a vested right entitled to constitutional protection.'" *Id.* at 246 n.5 (citing *Norton v. Town of Islip*, 239 F. Supp. 2d 264, 270 (E.D.N.Y. 2003) (other citation omitted).[5]

Here, Plaintiff again argues that the Property does not need to abide by Ordinance 009-009's requirements, this time claiming that it was grandfathered by Appendix A. *See* Dkt. No. 21 at 5. The Court disagrees. Although Appendix A allows the continuation of the use of any building, structure or land that was lawfully permitted when Appendix A was adopted or was "a nonconforming use that was permitted prior to the adoption of this ordinance and where the property owner has expanded [sic] substantial sums in reliance on valid permits," nothing in Appendix A confers a vested right in a different non-conforming use of the Property.[6] *See id.* at 53. Plaintiff sought to convert the Property from one legal non-conforming use to a different non-conforming use. Appendix A does not confer such a right, so the fact that Plaintiff

---

[5] The Court continued: "[The letter] does not establish that 26 Seminary was clearly entitled to convert the 26 Seminary Property from its prior legal non-conforming use to a different non-conforming use without seeking the requisite approval. Accordingly, [the] [p]laintiffs' contention that 26 Seminary was not required to comply with the parking requirements of the Ordinance because the property's 'legal non-conforming status allowed the parking of the building to continue as it was pre-Ordinance' is unavailing, as 26 Seminary did not seek to continue the legal non-conforming use of the property." *33 Seminary I*, 120 F. Supp. 3d at 246.

[6] Section 1201 of Appendix A states that "[t]he lawfully permitted use of any building, structure or land existing at the time of adoption of this ordinance, or any subsequent amendment thereto, may be continued in accordance with the provisions of this Article XII even though such use does not conform to the regulations and standards specified herein. . ." and "a nonconforming use will be vested if at the time of adoption of this ordinance, or any subsequent amendment thereto, the property owner has expanded [sic] substantial sums in reliance on valid permits . . . for a use which was permitted prior to the adoption of this ordinance, or any subsequent amendment thereto, and shall not be required to comply with the site plan review procedure as set forth in Article IX of this Zoning Ordinance." *See* Dkt. No. 21 at 53.

discovered Appendix A does nothing to change the Court's conclusion from *33 Seminary I* that Ordinance 009-009 applies to the property.

Since Appendix A does not change the analysis, the doctrine of collateral estoppel prevents Plaintiff from relitigating the issue of whether Ordinance 009-009's parking requirements apply. This issue was raised in the prior proceeding, was actually litigated, and was decided on its merits when the Court granted summary judgment against Plaintiff. *See Interoceanica Corp.*, 107 F.3d at 91. Plaintiff had a full and fair opportunity to litigate the issue through his LLCs, and the resolution of the issue was necessary to support the final order. *See id.* Finally, application of collateral estoppel is fair, as the Court considered the argument at length in the prior litigation. *See Bear, Stearns & Co. Inc.*, 409 F.3d at 91. Therefore, the doctrine of collateral estoppel applies, and Plaintiff's request for a declaratory judgment on this issue is denied.

Next, Plaintiff asks the Court to declare that "in accordance with the Zoning Code of 1983 Appendix A 26 Seminary Avenue did not have a commercial space on the first floor July 3, 2007." *See* Dkt. No. 21 at 34-35. Plaintiff argues that since the commercial space was abandoned for over 12 months, it restored itself to residential use. *Id.* at 9-10. Here, Plaintiff relies on Section 1207 of Appendix A, which states that if any nonconforming use ceases for a period of 12 consecutive months, or 16 months in any two-year period, "such nonconforming use shall not thereafter be reestablished." *Id.* at 55.

In *33 Seminary I*, Plaintiff claimed that the first floor contained commercial space. *See 33 Seminary I*, 120 F. Supp. 3d at 246 (finding that it was "undisputed that at the time the letter was issued - and at the time that 26 Seminary purchased the property - the 26 Seminary Property contained a commercial space on the first floor, two residential units on the second floor, and one

residential unit on the third floor"). Regardless, even if the space restored itself to residential use, Plaintiff's argument that he would no longer need to comply with Ordinance 009-009 would still fail. Regardless of the first floor use, once Plaintiff attempted to modify the building, he needed to comply with all new town ordinances, including Ordinance 009-009's parking requirements. *See* Dkt. No. 21 at 53-55 (permitting a nonconforming use so long as it was "continued" and prohibiting modifications to a nonconforming use). Therefore, the Court denies Plaintiff's request for a declaratory judgment stating that the Property did not have a commercial space on the first floor on July 3, 2007.

Finally, Plaintiff's argument that Ordinance 009-009 was "interpreted and applied in an unconstitutional manner to the detriment of plaintiff" is barred by *res judicata*, because the Court addressed Plaintiff's constitutional claims at length in the prior action. *See supra* § III(B)(2).

As such, Plaintiff's request for a declaratory judgment is denied in its entirety.

### *4. Fraud on the Court*

"To find that a party has committed fraud on the court, it must be established by clear and convincing evidence that the party has repeatedly and intentionally lied 'about issues that are central to the truth-finding process.'" *Shah v. Eclipsys Corp.*, No. 08-CV-2528, 2010 WL 2710618, *14 (E.D.N.Y. July 7, 2010) (citation omitted). Plaintiff argues that Defendants withheld crucial information from Plaintiff and the Court, fraudulently argued to the Court that Plaintiff sought a change of use in the building, and fraudulently told the Court that the first floor space was commercial. See Dkt. No. 21 at 4-5, 8-9, 25, 29-30, 36. Defendants respond that Plaintiff's fraud on the court claim is "no more than a complaint that Defendants adopted certain legal arguments in the prior proceedings and took a purportedly erroneous view of the facts regarding 26 Seminary Property's status as a non-conforming prior use." *See* Dkt. No. 24-1 at 23.

17

Reviewing the Amended Complaint, the Court finds that Plaintiff failed to adequately allege the fraud on the court claim. Appendix A did not grant Plaintiff the right to change the building to a new nonconforming use, and Plaintiff has not alleged any facts to support his conclusory statement that he was entitled to the variance "as of right." *See 33 Seminary I*, 120 F. Supp. 3d at 246. Therefore, even if Defendants willingly chose not to disclose Appendix A to the Court in the prior action, that omission was not about an issue that was "central to the truth-finding process." *Giarrizzo*, 2012 WL 12991205, at *2. Additionally, the Court agrees with Defendants that the legal arguments and factual interpretations that the defendants made in *33 Seminary I* cannot support a fraud on the court claim. *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95-96 (2d Cir. 2002) (rejecting a fraud on the court claim where the defendants "disputed [the plaintiff's] version of the law and facts" which is "exactly what is expected in the normal adversary process"). As such, Plaintiff has not sufficiently alleged a fraud on the court claim, and that claim must be dismissed.

**C.     Relief from Final Judgment**

Defendants argue that the Court should treat this new action as an untimely Rule 60(b) motion for relief from final judgment or a Rule 60(d) action challenging the final judgment of *33 Seminary I*. *See* Dkt. No. 24-1 at 16-24. Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or] (3) fraud . . ., misrepresentation, or misconduct by an opposing party." Rule 60(d) provides that a court may "(1) entertain an independent action to relieve a party from a judgment, order, or proceeding; ... or (3) set aside a judgment for fraud on the court." *See* Fed. R. Civ. P. 60(d).

This case was brought individually, on behalf of Plaintiff, who was not a party to the prior litigation. Moreover, Plaintiff did not bring this case as a Rule 60(b) motion or Rule 60(d) action, and Defendants do not cite to any cases to support the proposition that the Court may construe this case as such. Therefore, the Court will not consider this new action to be a Rule 60(b) motion or Rule 60(d) action.

**D.    Leave to Amend**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "'An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).'" *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). "Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted." *Waltz v. Bd. of Educ. of Hoosick Falls Cent. Sch. Dist.*, No. 12-CV-0507, 2013 WL 4811958, *4 (N.D.N.Y. Sept. 10, 2013).

Here, Plaintiff's constitutional claims are precluded by *res judicata*, and his fraud on the court claim is entirely meritless. Additionally, the declaratory judgment that Plaintiff requests deals with issues previously litigated or completely without merit. Because the Court finds that better pleading cannot cure these deficiencies, amendment would be futile. Further, pursuant to Rule 2(A)(ii) of the Individual Rules and Practices of Hon. Mae A. D'Agostino, in order to avoid dismissal of this action, Plaintiff was required to cross-move to amend the Amended Complaint in

19

conjunction with his response to the Motion to Dismiss. As Plaintiff did not do so and amendment would be futile, the Court dismisses the action without providing an opportunity to amend.

**E.      Motion for Reconsideration**

As the Amended Complaint has been dismissed, the Court denies Plaintiff's Motion for Reconsideration as moot.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Motion to Dismiss (Dkt. No. 24) is **DENIED in part** and **GRANTED in part**; and the Court further

**ORDERS** that Plaintiff's Amended Complaint (Dkt. No. 21) is **DISMISSED WITH PREJUDICE**; and the Court further

**ORDERS** that Plaintiff's Motion for Reconsideration (Dkt. No. 26) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 19, 2019
           Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge